Initially, I would like to note that the jurisdictional landscape has changed with the enactment of the REAL ID Act. As held in the recent decision of this Court in Fernandez-Ruiz v. Gonzales, which we submitted as an additional citation, in the REAL ID Act, Congress restored judicial review over questions of law presented in a Petition for Review of a Final Removal Order, including decisions involving cancellation of removal under Section 240A of the INA. I believe that this means that the previous law in this area, which restricted jurisdiction even over legal questions where there was a discretionary determination of hardship, has been eliminated and that jurisdiction has been restored to this Court insofar as it deals with the legal issues relating to a hardship determination. As well as the due process claim briefed in this case, this appeal involves a question of law, and that is under international law, that under Article III of the Convention on the Rights of the Child, it has been construed and held to constitute customary international law. And that convention provides that in all actions concerning children, the best interests of the child shall be of primary consideration. The immigration judge in this case explicitly refused to apply international law in deciding the factors to be used in determining whether or not there was the requisite hardship to the two U.S. citizen children in this case. Doesn't the convention, though, recognize, in particular in Article IX, that deportation can occur and that it can separate parents and children? In other words, there's nothing in the convention, even assuming that it applies here, that would appear to preclude the separation of parents and children across international borders. I believe that the immigration laws contemplate that the separation can occur, but I also believe that the Article III, which deals with the … I'm talking about the convention itself. If you read it as a whole, not just Article III alone, it appears to contemplate that notwithstanding it considering the interests of the children, these separations can happen via deportation. I'm not disputing that separations can happen. What our position is, is that the judge, in weighing the factors, the various factors that he goes through, should have considered the best interests of the child as the primary consideration in accordance with Article III. And that's not to say that children cannot, under the INA, be separated from their parents through deportation. Rather, I'm talking about the calculation, the weight that should be given to different factors. And that here, the immigration judge declined specifically to give weight to that factor. What you're really asking us to do, it seems to me at least, is to go against the clear intentions of Congress in the immigration laws to limit the consideration of the agency to this extreme hardship situation in deference to a treaty that has never been ratified by our country. Why should we do that? Well, it's true that the treaty has not been ratified. I would ask this Court to follow the opinion in the Beharie decision that indicates that although not ratified, it does constitute customary international law, because every country except Somalia in the United States has adopted that convention. And in the Beharie decision, they said that Section III, which does say that the best interests of the child must be a primary concern, is customary international law. But doesn't that require us to ignore some very clear directives from Congress that are much more specific and clearly binding? I believe the two can be consistently read. The statutory element is that there must be exceptional and extremely unusual hardship. And I believe that in weighing the relevant factors that the best interests of the child should be given the primary consideration in that balancing of the factors to determine whether there's exceptional and extremely unusual hardship, such as in this case, we have a situation where we have two children now eight and ten United States citizens. And the record here shows that the parents to give them the advantages of living in the U.S. would actually leave those children with relatives in the United States when the father's deported. They would be separated from parental guidance. And we believe that the best interests of children, there should be a factor in determining the exceptional and extremely unusual hardship standard. And as the, as we believe international law provides, that that factor should be given primary consideration. So what we're really asking is for this case to be remanded so that the judge can give that factor the primary consideration. And I believe that is not inconsistent with the Immigration and Nationality Act for cancellation of removal. As this Court held in Ali v. Ashcraft, an act of Congress ought never be construed to violate the laws of nations, law of nations, if any other possible construction remains. So I would ask the Court here to accept the Beharry decision on that point and read these two as consistent. That is international law. The decision is Beharry? Pardon? What court is that? Eastern District of New York. Okay. Judge Weinstein, it was reversed on other grounds by the Second Circuit, but he, the Judge Weinstein did specifically hold in there that Article III of the CRC Convention on the Rights of the Child is customary international law. So where the statutory language calls for exceptional and extremely unusual hardship, you would – your position is we can interpret that to mean exceptional and extremely unusual hardship, taking into account the best interests of the child? That is our – It sort of sounds a little bit like drafting a statute. Well, the position, Your Honor, is that when the immigration judge is balancing factors to decide if that level of hardship has been reached, that in balancing those factors, that he should be giving some extra weight to the best interests of the child, since international law, we believe, provides that that must be the primary consideration. So I want to graft it on there. I would just say that in the balancing of the factors, that international law dictates that a certain factor gets some more weight, and that the judge should honor that. It's an interesting argument, Your Honor. I agree. Okay. It gets into a little bit of difficulty in that in just about every case where someone is deported, it's probably not in the best interest of a citizen child that their parent is deported, because they either have to leave where they grew up, or they have to live without their parent. Well, and we're not contending that in every case where it's contrary to the best interest of the child, that that would necessarily prevent deportation. What we're saying is that when the judge does his analysis and balances all the different factors, that he should be giving a greater weight to the best interest of the child than the other factors, and it still might result after a fair balancing that the judge decides that deportation is still required. But we believe that he applied the improper standard by not giving that weight. Okay. And I would note there was one other point that we have made in this case, and that is that the decision by the BIA here was under a streamlining procedure where one judge affirmed the immigration judge without opinion. And we believe that this case involves issues which are not controlled by existing precedent, and which also would affect a number of people, and are therefore substantial, and that under the relevant regulation that streamlining was improper. So we would ask this Court to also remand, because there was improper application of streamlining in this case under 8 CFR 1003.1. So to conclude... Well, I mean... Yes, Your Honor. Generally, the immigration judge does consider the best interest of the child when making the determination. You're just saying it ought to get a little extra weight. Yes, because, Your Honor, the we believe the... How do you know it isn't getting extra weight now? Well, the judge in this case, for example, specifically declined on page 10 of the experts, 10 and 11, specifically declined to apply that test which we were asking him to apply. So I believe, although the judge who, incidentally, I believe was a very good immigration judge, but that judge, I believe, misapplied the standard because I believe that the best interest of the child is a factor, but not as the primary consideration in balancing all the factors. And I believe that's the key thing that we're asking is for this Court to read the statute together with international law on that weight issue. Not that every, in every case where the best interest of the child will be contrary to deportation would the removal order have to be denied, but that the judge in weighing things and calculating should give that a little extra weight and should recognize that as a duty under international law. You referred to experts of record, but page 10... Yes. Your Honor, it's... The page I've got seems to be 000055. Oh, it's actually in the handwritten numbering at the bottom. It would be 10, which is page 53. Page 53. Yes. And... I was looking at page 55. 54. Starting near the top of page 53. Before I reach, is that where you're... Yeah. I think that's the Bihari discussion. Okay. I've got it. I just was trying to reconcile my... Thank you. Thank you. Thank you. Go ahead. Thank you. May it please the Court. My name is Aviva Poxter. I'm the Respondent. The petition for review should be denied in this case, Your Honors, because this Court lacks determination over the hardship, lacks jurisdiction, I apologize, over the hardship determination. And particularly what Petitioner is asking you to do is to simply re-weigh a hardship determination. And this Court lacks jurisdiction, as you previously stated in Romero-Torres and other cases. This Court lacks jurisdiction to do that. Well, didn't we say even before the Real ID Act in Romero-Torres that we do have jurisdiction to consider whether the agency's interpretation is within the range of permissible interpretations of the law? Yes. In Romero-Torres, this Court did say that. However, clearly the agency's interpretation in this case is within every possible parameter set by Congress. That's the merits. That isn't really the jurisdiction. That's, I guess, not the jurisdictional question. Do you disagree, then, that the Real ID Act has changed the jurisdictional landscape for us? Absolutely. I think the Real ID Act did not change this Court's jurisdiction over hardship determinations. And the Real ID Act, in fact, makes clear, tries to establish that discretionary determinations are not subject to the Court's jurisdiction. I would say that the Real ID Act certainly did not change that for purposes of cancellation of removal. But even assuming that this Court does have jurisdiction in this case, Petitioner's international law argument fails on two separate grounds. And the first being the one that you previously pointed out, Judge Graber, which is that the hardship determination is not being applied contrary to international law. The Convention on the Rights of the Child, at Article IX, Sections 3 and 4, specifically contemplates the possibility that a parent will, in fact, be deported and separated from a child. And as long as that's done according to a judicial process of the nation-state and the sovereign state involved, there's no problem with that under the Convention of the Rights of the Child. And in addition, there's nothing to say in this case that anything that was done otherwise contrary to the Convention of the Rights of the Child or the CRC. In this case, Petitioner had a full and fair hearing, every opportunity to present evidence. And again, what I'm perhaps confused about is that when we talk about cancellation of removal, we're talking about hardship to the child. That's the only factor that will establish Petitioner's eligibility to remain here. So obviously, those hardship to the children is a parallel, if not same, consideration for practical purposes as what's in the best interest of the child within the parameters set by Congress. And what we're talking about here is a very clear statute on what Petitioner has to establish and the availability of remedies. Congress could have said, hey, by the way, we also are going to be bound by the Convention of the Rights of the Child, which it hasn't. And we can apply it. Let's apply that in cancellation cases. Congress certainly could have done that. And indeed, torture convention regulations that we follow are come from, derived from the Convention Against Torture. In this case, Congress has had numerous opportunities to provide relief that this particular argument that's being made now has been raised for decades, even under the suspension of removal auspices. Suspension of deportation, I'm sorry. And it hasn't, it still is contrary to a statute that was written by Congress. And Petitioner can't ask this Court to rewrite the statute so that it fits the outcome that he would like. That's not the way it works. And in addition, Congress isn't bound by international law. I mean, this Court has a decision, Munoz v. Ashcroft, that specifically states that. And if it chooses to do so, Congress can legislate contrary to international law, as long as that legislation is constitutional. So really, Congress didn't have to do that. And certainly, the immigration judge in this case wasn't bound by that. What did the I.J. consider here when the decision, you know, was made concerning the best interest of the child? Well, the immigration judge considered all of the usual factors that are considered in a cancellation of removal, such as the age of the children, whether the children will, whether children are healthy, what languages the children speak. Those types of determinations were all made here the way that they always are. Well, tell me what this one did. Well, the immigration judge in this case, and I also wanted to point out that the immigration judge made the proper decision regarding the Beharry argument, et cetera. The immigration judge said, I'm aware of these arguments. I know that they're out there. I am not bound by international law. And in fact, I cannot apply international law. Okay. But you haven't answered my question. Oh, okay. Certainly, Your Honor. Well, the immigration judge considered the age of the children. What did he say? Well, he said that, I believe he said, and I'm paraphrasing here, that the children are of tender age. He said that the children have grown up in a Spanish-speaking home. They seem to be in bilingual education. They seem to be doing well in school. He accepted that Petitioner loves his children and wanted to provide for them. He noted the father's Petitioner's employment opportunities in Mexico. He also discussed the testimony of a witness who had agreed to take the children, if necessary. That's the companion's sister? Yes. I suppose she would be the aunt of the children. And in general, he noted that there were emotional factors involved, but found that he didn't establish the requisite exceptional and extremely unusual hardship. What did he say about the best interest of the children? Did he say, well, it's in their best interest to go down to Mexico? Well, he didn't actually say best interest of the children, because, again, he can't consider the actual phrasing of the Convention on the Rights of the Child. According to this one, the children aren't going to Mexico, but they would be staying with, is this? The children are going to stay in the United States. According to his testimony, yes, the children are not going to Mexico. The Petitioner is going to Mexico. And in fact, the children were going to remain here with their mother, who did not have status until such a time as she could not remain here either. But the plan at the time of the hearing was that the children are going to stay in the United States, enjoy all of the... With their mother or their mother's sister, right? Initially, they were going to stay with their mother. If such a time came where the mother could no longer remain here because she was also illegal, then the children were going to go with the aunt who had status. And again, it's axiomatic in immigration law and has been for years that having a child in the United States does not imbue you with any rights that are not particularly created by Congress. Petitioner's argument, though he tries to skirt it, I would say, is basically that if you come here and have a child, you should be allowed to stay because that's in the best interest of the child. And there are numerous cases cited in our brief that say no, that's never been the standard. It's still not the standard. You cannot come here and have a child and expect to be able to stay here merely for the fact that you had a child in the United States. The children get citizenship, but the parents don't get any particular rights that Congress doesn't otherwise allow for them, such as cancellation of removal, simply by virtue of coming here and having a child. I understand your position on that, but I think in substance he may be arguing what you said or in practical effect. But he's also arguing in theory, as I understand it, that the immigration judge had to more expressly give weight to the best interest of the child. And the immigration judge did discuss that Beharry case, say it's being appealed by the Attorney General. In any event, I'm not bound by the Second Circuit. So I guess the question is whether the statutory language, at least in my mind, whether the statutory language here has to be interpreted to require some extra weight on the best interest of the child, that it be considered explicitly. It seemed like the I.J. said that he really couldn't consider it more absent regulations that adopted it. Is that correct? Right. Well, that's yes. I mean, over and above what was already being considered for exceptional assuming. No, the I.J. doesn't have jurisdiction to do that, because that is the standard that comes from an international law document under which we are not bound. He basically is asking you to rewrite the statute and to reweigh the hardship so that it comes out in his favor. But that's respectfully not what this court has jurisdiction to do. And in addition, it doesn't, he just basically wants you to change the outcome for him. Asking us to hold that international law modifies or trumps or at least modifies the application of this statute. Right. Is that a fair statement? That's a fair statement. And respectfully, this court doesn't have jurisdiction to do that. If you did find that somehow that it was binding, there's nothing to say. Again, as Judge Graper pointed out before, there's nothing to say that it's not being done in a manner that's consistent with the entire convention. He can't pick out sections of the convention that he likes better and have just those sections applied. And in addition, primary, it doesn't, even the convention doesn't say that the primary, the only concern is going to be hardship to the child. It says that it's a primary concern, not that it's the only, sorry, the best interest of the child. The convention doesn't say that it has to be the only consideration, but just that it's a primary consideration. And in this case where the children are the qualifying relatives, then certainly their, the factors are being, their factors are obviously being concerned. You're arguing the whole hardship determination here relates to the interest of the children in a sense. Yeah, in a sense, yes, of course, because they're the qualifying relatives, absolutely. That's what he was talking about. Yes. Were there any other qualifying relatives? No, there were not. We're talking strictly about the children. We're talking about the children and their formative years and, you know, their education. Yes. Not about anybody else really. Right, and the factors with the father, the factors relating to the father concern the children, for example, you know, his employment possibilities in Mexico, such like that, factors like that are really for the children's benefit being considered. So he acknowledges the children would have an emotional problem to be separated from the father. Yes. That's what he says. Yes, he does. But he doesn't, still doesn't find it extreme and unusual, exceptional and unusual hardship. Right, because unfortunately the emotional problems that these children are going to face are fairly standard and they are a result of their father's decision to come here illegally and reside here for years and years and have children under those circumstances. He undertook them himself. Thank you, Your Honors. Anything else? Yes, thank you, Your Honor. I would just like to emphasize that our position is not to replace the standard that is set forth in the cancellation of removal statute, but simply to have a ruling that the immigration judge must, in the balancing of factors, make the best interest of the children the primary consideration. And here, although the immigration judge did consider some hardships to the children, he did not make the best interest as the primary factor. And, in fact, I believe he expressly rejected that consideration in his opinion. So we're not trying to change the statute. I believe this is consistent with the statute, and we would ask you to remand. Very interesting. All right. Thank you. Thank you very much. I would call the next matter. This matter is submitted. I would call the next matter.
judges: Pregerson, Graber, Gould